IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| INGENIERIA, MAQUINARIA Y EQUIPOS DE COLOMBIA S.A., <br><br> Petitioner, <br><br> v. <br><br> ATTS, INC., <br><br> Respondent. | HONORABLE JEROME B. SIMANDLE <br><br> Civil Action No. 17-3624 (JBS/JS) <br><br> **OPINION** |

APPEARANCES:

George N. Styliades, Esq.
LAW OFFICES OF GEORGE N. STYLIADES
214 West Main Street
Suite 105
Moorestown, NJ 08057
    -and-
Tiffany N. Compres, Esq. (pro hac vice)
SANDLER, TRAVIS & ROSENBERG, P.A.
1000 NW 57th Court
Suite 600
Miami, FL 33126
    Attorneys for Petitioner

Jeffrey P. Resnick, Esq.
SHERMAN, SILVERSTEIN, KOHL, ROSE & PODOLSKY, PC
East Gate Corporate Center
308 Harper Drive
Suite 200
Moorestown, NJ 08057
    Attorney for Respondent

**SIMANDLE, District Judge:**

**I. INTRODUCTION**

This matter comes before the Court on Petitioner

Ingenieria, Maquinaria Y Equipos de Colombia S.A.'s ("IMECOL")

motion to confirm an arbitration award. [Docket Item 3.] IMECOL and Respondent Aviation Technology & Turbine Service, Inc. ("ATTS") were parties to a three-year exclusive agency agreement regarding the sale of commercial equipment in Colombia (the "Agency Agreement"). After ATTS failed to make commission payments to IMECOL, IMECOL initiated arbitration proceedings against ATTS before the Center for Mediation and Arbitration of the Chamber of Commerce of Cali ("CAC") pursuant to Clause 14 of the Agency Agreement (the "Arbitration Clause"). ATTS conceded it was notified of the arbitration proceedings, but opted not to participate. Ultimately, CAC found in IMECOL's favor and determined that ATTS and a Colombian subsidiary, ATTS Energía, were jointly and severally liable to IMECOL for $289,659.00. IMECOL now seeks to have this Court confirm the Colombian arbitration award.

The principal issue presented by IMECOL's motion is whether the Arbitration Clause is enforceable against ATTS under the Inter-American Convention on International Commercial Arbitration ("the Convention") and Federal Arbitration Act ("FAA"), in light of ATTS's allegations of breach of contract and fraudulent inducement. To that end, the Court must consider whether ATTS waived any potential defenses by choosing not to appear at the arbitration proceedings and whether Colombian bankruptcy proceedings against ATTS's subsidiary, ATTS Energía,

2

affect this Court's ability to confirm the arbitration award in IMECOL's favor against ATTS alone. For the reasons that follow, the Court will grant IMECOL's motion.

## II. BACKGROUND

### A. Factual Background

ATTS sources commercial equipment for engineering projects and, as is relevant to this lawsuit, is the exclusive agent of ISGEC John Thompson Ltd. ("IJT"), a global engineering company, for all of IJT's and its subsidiaries' projects in Latin America. (Declaration of Aseem Khan ("Khan Decl.") at ¶¶ 2-5.) Some time before 2011, IMECOL contacted ATTS to express interest in selling IJT commercial boilers in Colombia. (Id. at ¶¶ 6-7.) According to ATTS, IMECOL "represented that all sales it made would be coordinated through ATTS and that IMECOL would have no contact with ITJ." (Id. at ¶ 8.)

On February 11, 2011, IMECOL and ATTS entered into the three-year Agency Agreement. (Id. at ¶ 10.) Under the Agency Agreement, the parties agreed that IMECOL would act as ATTS's sub-agent and would sell IJT products in Colombia. (Id.) The Agency Agreement provided, inter alia, that if a customer outside of Colombia came to IMECOL and wanted to purchase IJT products, IMECOL was to inform ATTS and await further instruction; that IMECOL was prohibited from having any direct contact with IJT; and that ATTS was to pay IMECOL commissions

3

for sales contracts it secured. (Id. at ¶¶ 11-15; see generally Agency Agreement.) The Agency Agreement also included the mandatory Arbitration Clause:

> If at any time a question, dispute, or difference arises between the parties in relation to or arising from this Agreement . . . the parties must submit the same to arbitration in accordance with the Commercial Code of Colombia. The adjudication of the arbitrators will be definitive and binding on the parties. The arbitration will take place at the Chamber of Commerce of Cali, Colombia.

(Id. at § 14.)

According to ATTS, IMECOL made one sale of IJT products within Colombia, and ATTS made two of three commission payments to IMECOL. (Khan Decl. at ¶ 17.) ATTS further claims that, before it disbursed the third commission payment, it learned that IMECOL breached the terms of the Agency Agreement by contacting IJT directly and negotiating an agreement to be their agent in Latin America, and by contacting customers in Peru. (Id. at ¶¶ 17-20.) According to ATTS, IMECOL's conduct demonstrates it never intended to actually be ATTS's sub-agent and instead came to ATTS under false pretenses to obtain a connection to IJT. (Id. at ¶ 21.) ATTS subsequently "terminated" the Agency Agreement and refused to pay further commissions. (Id. at ¶ 26.)

**B. Procedural History**

On May 9, 2014, IMECOL initiated arbitration in Colombia against ATTS and ATTS Energía,[1] ATTS's South American subsidiary. (Verified Petition at ¶¶ 9-10.) ATTS received notice of the arbitration proceedings brought before the Colombian tribunal, but chose not to participate "because the Agreement was terminated and no longer in effect." (Khan Decl. ¶ 27; see also Verified Petition at ¶ 12.) On May 20, 2015, the tribunal determined that it could continue arbitration proceedings without ATTS's participation. (Id. at 13.) On February 22, 2016, the Colombian arbitrators rendered a $289,659 award in IMECOL's favor. (Id. at ¶¶ 14-15; see generally Exhibit B to Verified Petition.) ATTS has not paid any portion of the arbitration award. (Verified Petition at ¶ 16.) This federal suit to confirm the arbitration award followed on May 19, 2017. [Docket Item 1.]

### III. STANDARD OF REVIEW

Review of an arbitration award is extremely limited and conducted under a highly deferential standard. See United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 36 (1987); see also Dluhos v. Strasberg, 321 F.3d 365, 372 (3d Cir. 2003) ("If this proceeding qualifies as arbitration under the FAA, then the dispute resolution is subject to extremely limited

---

[1] ATTS Energía filed for bankruptcy in Colombia in late 2012 and that matter is still ongoing. (Khan Decl. at ¶ 3.)

review."). A court's "role in reviewing the outcome of the arbitration proceedings is not to correct factual or legal errors made by an arbitrator." Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs, 357 F.3d 272, 279 (3d Cir. 2002). Rather, an arbitration award may be vacated only in the "exceedingly narrow" circumstances specified under the FAA, or as is relevant here, the Convention. Brentwood Med. Assocs. V. UMW, 369 F.3d 237 (3d Cir. 2005); China Minmetals Mats. Import & Export Co., Ltd. v. Chi Mei Corp., 334 F.3d 274, 283 (3d Cir. 2003).

## IV. DISCUSSION

### A. The Arbitration Clause is Valid and Subject to Colombian Law

ATTS argues that the Arbitration Clause is invalid under New Jersey law because it does not contain a "clear and unambiguous waiver of a court and jury trial." (Resp. Br. at 9-10) (quoting Atalese v. U.S. Legal Serv. Grp., 219 N.J. 430, 448 (2014)). IMECOL responds that, by the express terms of the Agency Agreement, the parties' dispute is subject to Colombian law, not New Jersey law. (Pet. Reply Br. at 10-13.) Moreover, IMECOL argues, the Arbitration Clause is valid under the Convention and FAA because the Agency Agreement was in writing and signed by both parties. (Pet. Reply Br. at 3-5.)

6

Under the Convention, enforcement of an arbitration award may be refused when there is proof that an "agreement was not valid under the law to which the parties have subjected it or, failing any indication thereon, under the law of the country where the award was made." Convention art. 5(1)(a). Here, the Agency Agreement clearly states that "[t]his Contract will be governed and interpreted according to the law of the Republic of Colombia." (Exhibit A to Verified Petition at § 13.) Subject to the terms of the Agency Agreement, the validity of the Arbitration Clause is thus subject to Colombian law.

Even if the Agency Agreement were subject to New Jersey law, which it is not, the Court rejects ATT's argument that the Arbitration Clause does not constitute a "clear and unambiguous waiver of a court and jury trial." (Resp. Br. at 10.) The Arbitration Clause plainly spells out that, "[i]f at any time a question, dispute, or difference arises between the parties in relation to or arising from this Agreement . . . the parties must submit the same to arbitration in accordance with the Commercial Code of Colombia." (Exhibit A to Verified Petition at § 14). The Arbitration Clause further provides that, "[t]he adjudication of the arbitrators will be definitive and binding on the parties." (Id.) The Court finds this language evinces a clear and unambiguous meeting of the minds that any dispute

7

related to the Agency Agreement arising between the parties will be submitted to arbitration.

Thus, under Colombian or New Jersey law, the Arbitration Clause is valid.

**B.  ATTS Waived its Right to Challenge the Validity of the Agency Agreement**

ATTS next argues that IMECOL's alleged failure to comply with the Agency Agreement constitutes breach of contract and fraudulent inducement, thereby rendering the entire Agency Agreement invalid and excusing ATT's obligation to participate in the Colombian arbitration process. (Resp. Br. at 5-8.) In support of its challenge to the validity of the Agency Agreement, ATTS claims that, before entering into the three-year exclusivity agreement, IMECOL "represented that it would sell IJT commercial boilers in Colombia as an agent of ATTS" and "that all sales it made would be coordinated through ATTS and that IMECOL would have no contact with IJT." (Khan Decl. at ¶¶ 7-8, 10.) According to ATTS, IMECOL then "contacted IJT directly to schedule appointments in Peru and Colombia, a clear violation of IMECOL's agreement with ATTS," and "additionally visited a customer in Peru and contracted for a sale of IJT products in Peru, contrary to the parties' agreement which was limited to sales in Colombia, without involving ATTS." (Id. at ¶¶ 19-20.) "In light of IMECOL's course of conduct throughout the parties'

relationship," ATTS concludes, "it became clear that IMECOL never intended to honor the parties' agreement and its sole goal in entering a relationship with ATTS was to obtain a connection with IJT." (Id. at ¶ 21.) Because the Agency Agreement was "void," ATTS now argues that its obligation to participate in the arbitration process should be excused. (Resp. Br. at 7.) IMECOL counters that any challenge to the validity of the Agency Agreement as a whole, rather than the Arbitration Clause itself, needed to be made before the arbitrator. (Pet. Reply Br. at 9-10.) By failing to participate in the arbitration, IMECOL argues, ATTS waived its right to assert any defenses with respect to the validity of the Agency Agreement. (Pet. Reply Br. at 6-8.)

The FAA, of which the Convention is a part, reflects a strong federal policy favoring arbitration that carries "special force" when international commerce is involved. China Minmetals, 334 F.3d at 281 (quoting Sandvik v. Advent Int'l Corp., 220 F.3d 99, 104 (3d Cir. 2000)). Indeed, the United States' express purpose behind joining the Convention was to "encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries." Scherk v. Alberto-Culver Co., 417 U.S. 506, 520 n.15 (1974). Thus, in reviewing a foreign

9

arbitration award decided pursuant to the Convention, "a district court's role is limited - it must confirm the award unless one of the grounds for refusal specified in [Article V of] the Convention applies to the underlying award." Admart AG v. Stephen & Mary Birch Found., Inc., 457 F.3d 302, 307 (3d Cir. 2006).

As the Supreme Court long ago made clear, where there is a valid arbitration clause, a party may only challenge in federal court the validity of the arbitration clause itself, and not, broadly, the contract as a whole. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 403-04 (1967) ("[I]f the claim is fraud in the inducement of the arbitration clause itself - an issue which goes to the 'making' of the agreement to arbitrate - the federal court may proceed to adjudicate it. But the [FAA] does not permit the federal court to consider claims of fraud in the inducement of the contract generally."). Thus, "unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2006).

ATTS relies heavily on China Minmetals for the proposition that any time a party alleges breach of contract or fraudulent inducement of a contract containing an arbitration clause, a federal court is entitled to review the record for invalidity of

the contract as a whole. (Resp. Br. at 8.) ATTS overreads that case.

In China Minmetals, the respondent appeared before an arbitrator and presented evidence that the contracts at issue were entirely fraudulent, as they contained a forged signature of a nonexistent employee and a forged corporate stamp. China Minmetals, 334 F.3d at 277. Over the respondent's repeated objections to the arbitrator's jurisdiction, the arbitration tribunal held that the respondent had failed to meet its burden of showing that the contracts at issue were forged. Id. at 278. After hearing oral argument on the motion to confirm, the district court enforced the arbitration award without conducting an evidentiary hearing or issuing a written opinion explaining the district court's reasoning. Id. Within this context, the Third Circuit explained:

> [A] party that opposes enforcement of a foreign arbitration award under the Convention on the grounds that the alleged agreement containing the arbitration clause on which the arbitral panel rested its jurisdiction was void ab initio is entitled to present evidence of such invalidity to the district court, which must make an independent determination of the agreement's validity and therefore of the arbitrability of the dispute, at least in the absence of a waiver precluding the defense.

Id. at 289. Because the party opposing the arbitration award preserved its objection to the arbitrator's jurisdiction by appearing at the arbitration hearing and putting forth some evidence that the contracts were fraudulent, the Third Circuit

11

held that the district court erred by enforcing the arbitration award without a written opinion that considered the disputed facts surrounding the allegedly-forged contract. Id. at 289-90.

Unlike the respondent in China Minmetal, ATTS voluntarily opted out of the Colombia arbitration proceedings entirely. Cf. BCB Holdings Lmtd. v. Belize, 110 F. Supp. 3d 233, 248 (D.D.C. 2015) (distinguishing China Minmetal by noting that the respondent failed to preserve its argument that the contract was void ab initio by "choosing" not to participate in arbitration). By failing to appear at the arbitration hearing and object to the validity of the Agency Agreement, ATTS waived its right to argue that IMECOL breached the contract or that the Agency Agreement was the product of fraudulent inducement. See Neuronetics, Inc. v. Fuzzi, 552 F. App'x 134, 135 (3d Cir. 2014) ("[A] party cannot refuse to participate in arbitration or fail in arbitration to raise a particular argument concerning the merits of the grievance and later seek judicial resolution of that same issue.") (internal quotation marks and citation omitted); Int'l Bhd. of Elec. Workers, Local Union No. 545 v. Hope Elec. Corp., 380 F.3d 1084, 1101 (8th Cir. 2004) ("To the extent that a particular issue is arbitrable, . . . a party cannot refuse to participate in arbitration or fail in arbitration to raise a particular argument concerning the merits of the grievance and later seek judicial resolution of that same

issue."); Dean v. Sullivan, 118 F.3d 1170, 1172 (7th Cir. 1997) ("A disputant cannot stand by during arbitration, withholding certain arguments, then, upon losing the arbitration, raise such arguments in federal court.").[2]

Commercial parties are free to contract for nearly anything including, as is relevant here, agreeing "to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." Rent-A-Center, West, Inc. v. Jackson, 561 U.S. 63, 69 (2010). Here, the parties bargained for a Colombian arbitration panel's resolution of any "question, dispute, or difference [that] arises between the parties in relation to or arising from [the Agency] Agreement." (Exhibit A to Verified Petition at § 14). This included a determination of whether IMECOL fraudulently induced the creation of the Agency Agreement. For the reasons explained above, ATTS waived its

---

[2] To the extent ATTS did not waive, it has provided no proof to the arbitrators or to this Court that the Agency Agreement was fraudulently induced. Instead, Respondent has merely advanced the naked assertion that, "[i]n light of IMECOL's course of conduct throughout the parties' relationship it became clear that IMECOL never intended to honor the parties' agreement and its sole goal in entering a relationship with ATTS was to obtain a connection with IJT." (Khan Decl. at ¶ 21.) Indeed, at oral argument, ATTS's counsel admitted that he possesses no evidence of fraudulent inducement at this point. (Oral Arg. Tr. 18: 5-7, 18-23; 22: 10-12 (Oct. 19, 2017)). This stands in stark contrast to the evidence that respondent presented in the China Minmetal case, as described supra.

right to challenge the validity of the Agency Agreement when it chose not to appear at the Colombian arbitration proceedings. Accordingly, the Court will not set aside the arbitration award because of ATTS's claim that the Agency Agreement was breached or fraudulently induced.

### C. ATTS Energía's Pending Bankruptcy does not Render this Matter Non-Justiciable

Finally, ATTS argues that IMECOL's motion should be denied because the bankruptcy petition filed by ATTS Energía automatically stays all activity against an "indispensable party that was brought into the arbitration." (Resp. Br. at 9.) In response, IMECOL argue that, because the arbitrators found ATTS and ATTS Energía jointly and severally liable, ATTS Energía's pending bankruptcy is irrelevant. (Pet. Reply Br. at 13-14.) ATTS's counsel conceded at oral argument that Colombian law does not provide for an automatic stay for bankruptcy. (Oral Arg. Tr. 36: 17-24 (Oct. 19, 2017)). Because there appears to be no stay in Colombia, and because IMECOL only seeks to enforce the arbitration award against ATTS (a party not in bankruptcy who was found jointly and severally liable by the Colombian arbitrators), the Court finds that ATTS Energía's pending bankruptcy does not render this matter non-justiciable. A successful party who has won an arbitration award against two parties, jointly and severally, is free to pursue either one or

both parties. By seeking to enforce the arbitrators' award only against the non-bankrupt party, IMECOL is clearly within its rights, rending moot the issue whether it could have also proceeded against the bankrupt Colombian facility, ATTS Energía.

## V. CONCLUSION

For the foregoing reasons, the Court grants Petitioner IMECOL's motion to confirm the Colombian arbitration award. An accompanying Order will be entered.

**December 8, 2017**         **s/ Jerome B. Simandle**
Date         JEROME B. SIMANDLE
       U.S. District Judge